# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES WILLIAMS, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>E-BACKGROUNDCHECKS.COM, INC. d/b/a BACKGROUNDCHECKS.COM<br><br>    Defendant. | Case No.: 12-cv-00190 |

### DEFENDANT'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION TO TRANSFER TO THE NORTHERN
### DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)

  Defendant e-BackgroundChecks.com, Inc. d/b/a Backgroundchecks.com ("BGC") respectfully submits this brief in support of its Motion to Transfer to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). The Court should grant BGC's motion for the following two reasons:[1]

  First, the Northern District of Texas is far more convenient for the parties and witnesses. Nearly all of the testimony in this case will come from BGC employees who live and work within the Northern District of Texas. BGC is incorporated in Texas and has its principal place of business in the Northern District of Texas. BGC maintains the documents and information at issue in this case at its Dallas headquarters. Furthermore, BGC's actions underlying each of Plaintiff's claims took place in Northern District of Texas—in other words, BGC manages the

---

[1] This Court grants § 1404(a) motions to transfer where, as here, it is equitable to do so. See, e.g., Mitchell v. First N. Credit Union, No. 07 C 1891, 2007 WL 2948374 (N.D. Ill. Oct. 4, 2007) (Norgle, J.); Jurincie v. AG Trucking, Inc., No. 05 C 4585, 2005 WL 2663508 (N.D. Ill. Oct. 14, 2005) (Norgle, J.); Portfolio Techs., Inc. v. Church & Dwight Co., No. 04 C 5141, 2004 WL 2931286 (N.D. Ill. Dec. 9, 2004) (Norgle, J.); Tong v. Direct Trading Corp., No. 02 C 8331, 2003 WL 22282466 (N.D. Ill. Oct. 1, 2003) (Norgle, J.).

processes for all its consumer reports in Dallas and Plaintiff was applying for a job in Texas. (See Compl. ¶ 11). Additionally, because Plaintiff brings this case as a putative *nationwide* class action, a representative plaintiff could have brought this case anywhere in the country. The only connection between the class claims and Illinois seems to be that Plaintiff's attorneys are from Illinois and found an appropriate Illinois plaintiff.

Second, litigating this case in the Northern District of Texas would serve the interests of justice. This case turns on questions of federal law—the Fair Credit Reporting Act ("FCRA")—which a court in the Northern District of Texas is presumptively able to apply as competently as this Court. Furthermore, the Northern District of Texas has a considerably less crowded docket and shorter median time from filing to trial. See Fed. R. Civ. P. 1 (noting that the Rules should be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"). BGC's location within the Northern District of Texas would also facilitate the discovery process and allow for an expeditious trial because of the close proximity of nearly all germane witnesses and evidence. Recognizing these reasonable considerations, courts in this district have transferred putative class actions arising under the FCRA to the defendant consumer reporting agency's home district on multiple occasions.[2] Likewise, this case presents a situation where transfer to the Northern District of Texas would result in more efficient litigation without prejudicing Plaintiff.

## FACTUAL BACKGROUND

Defendant BGC is a Texas-based background check company with no offices or staff in Illinois. (See Declaration of Craig Kessler ("Kessler Decl.") ¶¶ 4, 12-13,24). According to the Complaint, Plaintiff resides in Illinois and applied for a job in Texas. (See Compl. ¶¶ 7, 11).

---

[2] See, e.g., Kapeluck v. Experian Info. Solutions, No. 03 C 3777, 2003 WL 23509647 (N.D. Ill. Dec. 18, 2003) (transferring to defendant credit reporting agency's resident district); Barela v. Experian Info. Solutions, Inc., No. 04 C 5144, 2005 WL 770629 (N.D. Ill. Apr. 4, 2005) (same).

Plaintiff alleges that he did not get the job in Texas because of BGC's inaccurate background check. (See Compl. ¶¶ 11-19). Specifically, Plaintiff alleges that as a result of erroneous information contained in a background check that BGC prepared, Plaintiff lost a job opportunity with Goodwill Industries of East Texas, Inc. (See id.).

Plaintiff asserts both individual and class claims, seeking individual damages, and statutory and punitive damages for the class, as well as costs and attorney's fees. (See Compl. Request For Relief). Specifically, Plaintiff seeks to bring claims on behalf of any consumer on whom BGC issued a consumer report containing public records in the past two years where BGC allegedly failed to provide notice to the consumer when issuing the report. (See Compl. ¶ 21). The class claims allege that BGC violated the FCRA by failing to follow reasonable procedures to ensure the accuracy of information in background reports and failed to notify consumers when furnishing background reports to employers. (See Compl. ¶¶ 35-36).

## ARGUMENT

**I.     The Legal Standard Under Section 1404(a).**

A district court may transfer a pending civil action to any other federal district "where it might have been brought" if the proposed transfer is "[f]or the convenience of [the] parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a) (2006); see Christopher v. Am. News. Co., 176 F.2d 11, 12 (7th Cir. 1949). As the movant, BGC bears the burden of proving the desirability of a § 1404(a) transfer, Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-20 (7th Cir. 1986), which rests in the trial court's sound discretion. See Van Dusen v. Barrack, 376 U.S. 612, 622 (1964) (noting that 1404(a) requires "individualized, case-by-case consideration of convenience and fairness"); Christopher, 176 F.2d at 12.

The § 1404(a) inquiry has three steps. A district court may transfer a case pursuant to 1404(a) where: (1) venue is proper in both the transferee and transferor districts; (2) "transfer is

for the convenience of the parties and witnesses;" and (3) transfer serves "the interest[s] of justice." Georgouses v. Natec Res., Inc., 963 F. Supp. 728, 730 (N.D. Ill. 1997). Here, all three factors are met.

## II.  Venue Lies in the Northern District of Texas.

Venue is proper in both the original district (N.D. Ill.) and proposed district (N.D. Tex.). Plaintiff commenced this action in the Northern District of Illinois and BGC does not dispute that venue is proper in this District. Thus, the relevant question under § 1404(a) is whether venue also lies in the Northern District of Texas, which depends on whether "the defendant is amenable to process in the other jurisdiction." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981) (internal quotation marks omitted).

BGC is amenable to process in the Northern District of Texas. Venue can be laid in any district where the defendant resides, which for a corporation is any district where it is subject to personal jurisdiction. 28 U.S.C. § 1391 (2006). For a corporation, personal jurisdiction can be laid either in the state in which it is incorporated or the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1) (2006). BGC is incorporated in Texas, and thus subject to personal jurisdiction in Texas. 28 U.S.C. § 1332(c)(1) (2006). (See Kessler Decl. ¶ 4). Likewise, BGC's principal place of business and nerve center is in Dallas, Texas. (See generally Kessler Decl. ¶¶ 9, 11-15); see Hertz Corp. v. Friend, 130 S. Ct. 1181, 1186 (2010) (holding that a corporation is subject to personal jurisdiction where it has its "nerve center"). Because BGC is incorporated and has its nerve center in Texas, it is subject to personal jurisdiction and venue is proper in the Northern District of Texas.

## III. Convenience of Parties and Witnesses and the Interests of Justice Favor Transfer.

### A. The Convenience of Parties and Witnesses Favors Transfer.

The second requirement for transfer is that transfer be convenient for the parties and witnesses. Andrade v. Chase Home Fin., LLC, No. 04 C 8229, 2005 WL 3436400, at *2 (N.D. Ill. Dec. 12, 2005). Various "private factors" and "public factors" comprise this inquiry: (1) the situs of the claim; (2) relative ease of access to sources of proof; (3) the costs of obtaining attendance of witnesses; (4) the plaintiff's forum preference; (5) the court's familiarity with the applicable law and (6) the desirability of resolving controversies where they arose. See Mitchell, 2007 WL 2948374, at *2 (Norgle, J.); Medi USA, L.P. v. Jobst Inst., Inc., 791 F. Supp. 208, 210 (N.D. Ill. 1992) (Norgle, J.). Here, these factors weigh in favor of transfer.

#### 1. The Situs of the Individual and Class Claims is Texas.

Texas is where Plaintiff's individual claim arose: BGC prepared his background report in Texas, *and* Plaintiff allegedly lost a job opportunity as a result in Texas. (Compl. ¶¶ 11-17). Plaintiff has alleged no facts, other than his mere residence, that connect this case to the Northern District of Illinois. See Tong, 2003 WL 22282466, at *5 (Norgle, J.) ("[T]his Court's relationship to [Defendant's] claims arise *only because she resides here*. The vast majority of the conduct giving rise to [Defendant's] claims, as well as the witnesses and sources of proof and other evidence, bear relationship to the Northern District of Texas." (emphasis added)).

Texas is also where the class FCRA claims arose. The class claims concern the production of consumer reports in Dallas, the actions of employees located in Dallas, and alleged non-actions that would have occurred in Dallas. There are no such connections to Illinois.

Furthermore, in an FCRA class action the situs of material facts is the defendant's home district because the primary issue is whether the defendant acted willfully and the actions underlying that question all occur at the defendant's office. See Klutho v. 21st Century Ins. Co.,

No. 07 C 4111, 2007 WL 4224296, at *2 (N.D. Ill. Nov. 26, 2007) (holding in FCRA class action that defendant's home district is the situs even for "purposes of damages with respect to the putative Illinois class members").[3]

Because the events underlying Plaintiff's Complaint occurred in Texas, the first factor weighs in favor of transfer to the Northern District of Texas.

### 2. Access to Sources of Proof is Easier in the Northern District of Texas.

The "relative ease of access to sources of proof" in the Northern District of Texas favors transfer. Mitchell, 2007 WL 2948374, at *4 (Norgle, J.). Access to evidence applies both to gathering information in discovery as well as making evidence available for trial. See Klutho, 2007 WL 4224296, at *3.

BGC's headquarters in Dallas, Texas houses nearly all of the information and witnesses relevant to this case. BGC maintains documents related to the production of consumer reports in Dallas. (Kessler Decl. ¶¶ 15-16). BGC houses the information from which BGC generates consumer reports on servers in Dallas.[4] (Kessler Decl. ¶¶ 18-21). Additionally, all of BGC's employees who had contact with Plaintiff's potential employer, as well as those of other class members, are located in Dallas. (Kessler Decl. ¶¶ 10, 13-14, 17). The majority of discovery would therefore take place in Texas, and the district court in Texas would be better able to

---

[3] Similarly, courts of other districts have repeatedly concluded that in an FCRA class action, the defendant's location is the appropriate venue. See, e.g., Klingensmith v. Paradise Shops, Inc., No. 07-322, 2007 WL 2071677, at *2-3 (E.D. Pa. July 17, 2007) (transferring to credit reporting agency's home state and noting that an FCRA class action focuses on the conduct of the defendant); Smith v. HireRight Solutions, Inc., No. 09-6007, 2010 WL 2270541, at *4 (E.D. Pa. June 7, 2010) (finding that the defendant's home state is the appropriate venue for FCRA class claims). HireRight, although not from this district, concerned remarkably similar facts and is informative as to the proper venue for FCRA class actions. There, plaintiff brought a putative class action against a credit reporting agency for alleged violations of the FCRA. 2010 WL 2270541, at *4. The court recognized that the class complaint had only a tenuous link to Pennsylvania (the plaintiff's home state) and, based on the balance of factors, transferred the action to the corporate defendant's home state, the locus of the common class claims. Id.

[4] BGC maintains redundant servers in Dallas, Texas and Chapin, South Carolina. (See Kessler Decl. ¶ 18). It does not house any data in Illinois. (See id. ¶ 24).

oversee discovery and conduct the proceedings, including compelling the appearance of unwilling witnesses. See Tong, 2003 WL 22282466, at *5 (Norgle, J.) (finding that ease of discovery and the court's ability to compel witnesses warranted transfer to the Northern District of Texas).

By way of example, BGC's Dallas headquarters houses the following key documents:

- Documents relating to the consumer report regarding the Plaintiff (Kessler Decl. ¶ 10);

- Documents and information reflecting BGC's procedures to ensure maximum possible accuracy of reports because those procedures were developed and implemented in Dallas (Kessler Decl. ¶ 11, 15);

- Documents reflecting how a BGC customer orders a consumer report and the information required during the ordering process (Kessler Decl. ¶ 15-16).

Additionally, BGC believes that non-party Express Employment Professionals, a staffing agency located in Tyler, Texas, and non-party Goodwill of East Texas, to which Plaintiff applied for a job, may have evidence relevant to Plaintiff's claims. The fact that non-party evidence and potential witnesses are also located within Texas lends further support to transferring this action to the Northern District of Texas. The convenience of non-party witnesses is of *paramount* concern in deciding motions to transfer. See Klutho, 2007 WL 4224296, at *3. Tyler, Texas, is approximately 95 miles from Dallas; it is approximately 910 miles from Chicago. See http://maps.google.com (last visited March 15, 2012)

As this Court has concluded on numerous occasions, key evidence's location in another state weighs strongly in favor of transfer. See, e.g., Marvel Group, Inc. v. Modular Interiors, No. 01 C 6577, 2002 WL 1052043, at *2 (N.D. Ill. 2002) (Norgle, J.) (transferring to Texas, the location of documents, records, and witnesses, and noting that forcing witnesses to travel from

Texas to Illinois for trial would "impose [an] undue hardship"); <u>Mitchell</u>, 2007 WL 2948374, at *3 (Norgle, J.) (transferring to Arizona, the location of relevant documents); <u>Tong</u>, 2003 WL 22282466, at *5 (Norgle, J.) (transferring to Texas, the location of documents and witnesses); <u>Jurincie</u>, 2005 WL 2663508, at *3 (Norgle, J.) (transferring to Indiana, the location of documents and witnesses, when only one plaintiff lived in Illinois). Like the foregoing cases, the concentration of documents, records, and witnesses in Texas warrants transfer in this case.

### 3. Costs of Obtaining Attendance of Witnesses are Lower in the Northern District of Texas.

Transferring this case to the Northern District of Texas will result in lower litigation costs and less inconvenience because BGC does all of its consumer reporting work in Dallas, Texas. The witnesses and voluminous information associated with BGC's consumer reporting processes all lay within the Northern District of Texas. It will impose significant costs and expense on BGC to make those sources of proof available in this District, whereas Plaintiff will suffer minimal inconvenience if the Court transfers the case to Texas. See <u>Mitchell</u>, 2007 WL 2948374, at *3 (Norgle, J.) (finding that transfer will necessarily inconvenience one party but that it is appropriate where it on balance results in less inconvenience).

<u>Mitchell</u> is instructive on this question. There, defendant moved to transfer to Arizona, its home state. <u>Id.</u> In granting the defendant's motion to transfer, this Court noted that the defendant's headquarters was in Arizona, which was also where its employees lived and where it kept records. <u>Id.</u> at *4. Importantly, this Court noted that litigating in the defendant's home district would require witnesses to travel "approximately 9 miles" from work to the courthouse. <u>Id.</u> (citing http://www.mapquest.com). The Northern District of Texas is equally convenient here: the courthouse is only 10.5 miles from BGC's office. See http://maps.google.com (last visited March 15, 2012).

Here, just as this Court concluded in Mitchell, trial in the Northern District of Illinois would subject Defendant's witnesses to "the inconvenience of constant travel to and from their home state, to a foreign jurisdiction." 2007 WL 2948374, at *4. The burdens of travel distance—and the attendant disruption of home and work life—are significant here: Dallas is more than 950 miles from Chicago. See In re Volkswagen AG, 371 F.3d 201, 204-05 (5th Cir. 2004) ("[W]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."); Marvel Group, Inc., 2002 WL 1052043, at * 2 (Norgle, J.) (noting that forcing witnesses to travel from Texas to Illinois for trial would "impose an undue hardship").

Here, BGC witnesses with knowledge pertinent to Plaintiff's claims who reside within the Northern District of Texas include the following individuals:

- Craig Kessler, BGC's President, who has relevant information regarding BGC's operations and production of consumer reports and can testify as to BGC's matching logic;
- Employees in BGC's sales department;
- Employees in BGC's client relations department; and
- Employees in BGC's data acquisition department.

On the other hand, only a single witness (i.e., Plaintiff) resides in this District. The cost of Plaintiff travelling perhaps once to Texas to testify at trial will be dramatically less than the costs BGC would bear in making its witnesses and evidence available in this District. See Portfolio Techs., Inc., 2004 WL 2931286, at *3 (Norgle, J.) (observing that when transferring

"one party will necessarily be somewhat inconvenienced" by travel, and comparing the relative burdens). As such, this third factor weighs in favor of transfer.

### 4. Plaintiff's Choice of Venue is Entitled to Minimal Deference.

Here, Plaintiff's choice of forum is entitled to minimal deference for two reasons: first, because he filed on behalf of a nationwide class and second, because the facts underlying the individual and class claims arose in Texas.

Plaintiff's choice of forum is entitled to minimal deference because it is a putative nationwide class action. Although courts give some deference to the plaintiff's choice of forum, "[a] plaintiff's choice of forum is usually not the determinative factor," Mitchell, 2007 WL 2948374, at *3 (Norgle, J.), and the Supreme Court has held that the plaintiff's choice of forum is *not* entitled to such deference where the case is brought as a representative nationwide class action. See Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs, . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate *merely because it is his home forum is considerably weakened.*" (emphasis added)).

Courts in the Seventh Circuit have similarly held that "[w]hen a nationwide class is alleged, less deference should be given to the plaintiff's choice of forum because any member of the class who subsequently chooses to appear might be faced with similar inconveniences, depending on where the action proceeds." Andrade, 2005 WL 3436400, at *5 ("[B]ecause Plaintiffs purport to bring a nationwide class action, and there is no basis to conclude that other putative class members would find it convenient for the action to proceed in the Northern District of Illinois, this further militates against affording significant weight to the present choice of forum." (quotation marks omitted)); Morris v. Am. Bioscience, Inc., No. 03 C 7525, 2004 WL 2496496, at *2 (N.D. Ill. Nov. 3, 2004) (collecting cases); Georgeouses, 693 F. Supp. at 730

(collecting cases and holding that for putative class actions, "plaintiff's home forum is ***irrelevant***" (emphasis added)); Eugene v. McDonald's Corp., No. 96 C 1469, 1996 WL 411444, at *3 (N.D. Ill. July 18, 1996) (stating that "the plaintiff purports to bring a nationwide class action, and thus we do not accord weight to his choice of forum because other members of the putative class might be inconvenienced by the selection" and collecting cases to that effect).

Plaintiff's choice of forum is also entitled to minimal deference because the class claims are unconnected to Illinois. Although Plaintiff filed in his home state, ***all of the operative facts common to the proposed class*** originated in Texas. Importantly, even Plaintiff's alleged individual injury occurred in Texas, where he applied for a job with Goodwill Industries of East Texas. (Compl. ¶ 11). Seventh Circuit courts have held that "the weight granted to the plaintiff's choice of forum is ***significantly diminished*** where the events giving rise to the cause of action took place outside the plaintiff's choice of forum." Commercial Union. Ins. Co. v. Auto Europe, L.L.C., No. 01 C 6961, 2002 WL 47026, at *2 (N.D. Ill. Jan. 10, 2002) (emphasis added); Marvel Group, 2002 WL 1052043, at *2 (Norgle, J.) ("Where the chosen forum is not the situs of material events, the chosen forum is entitled to less deference.")

In short, Plaintiff's choice of forum deserves little weight because the underlying events took place in Texas, the evidence and witnesses are in Texas, and both binding and persuasive authority indicates that Plaintiff's putative nationwide class action is entitled to minimal deference. Under similar circumstances, the Supreme Court has held that the defendant's location, and the "books, records and witnesses" that exist at the defendant's home office, are entitled to greater weight. Koster, 330 U.S. at 526. Consequently, the fourth factor favors transfer to the Northern District of Texas.

### 5. Familiarity with Applicable Law is a Neutral Factor.

Considerations about each forum's familiarity with the relevant law weigh neither for nor against transfer because this dispute does not involve state law where one forum has greater familiarity. See Van Dusen v. Barrack, 376 U.S. 612, 645 (1964) This case requires application of a federal law, the FCRA, in which both this Court and a transferee federal district court judge in the Northern District have expertise. Cf. Mitchell, 2007 WL 2948374, at *4 (Norgle, J.) (finding that a patent case, raising only questions of federal law, could be transferred because "both federal district courts are capable to adjudicate this case"); see 17 James Wm. Moore, Moore's Federal Practice, § 111.13[1][m] (3d. ed. 2011) ("[I]f the action does not involve complex questions of another state's law, this factor will be given little weight in the analysis."). The fifth factor is therefore neutral.

### 6. It is Desirable to Resolve this Controversy in Texas.

This controversy should be resolved in Texas, where it arose. Plaintiff applied for a job in Texas and suffered harm because of alleged actions by a Texas corporation that occurred in Texas. See Marvel Group, 2002 WL 1052043, at *3 (Norgle, J.) (transferring a case to Texas after finding that public interest favors transfer to the district where the operative facts underlying the dispute arose). As such, this dispute should be resolved in Texas, which has significantly more ties to the underlying events than Illinois. The sixth factor therefore weighs in favor of transfer.

### B. The Interests of Justice Favor Transfer.

The third and final part of the § 1404(a) inquiry is whether transfer would further the "interests of justice," which pertains to the "'efficient administration of the court system,'" and is a distinct and separate component of the inquiry. Mitchell, 2007 WL 2948374, at *4 (Norgle, J.) (quoting Coffey, 796 F.2d at 220-21). This factor analyzes: (1) the speed at which the case will

proceed to trial, (2) the court's familiarity with applicable law, and (3) local interests in having the case adjudicated at home. Here, the interests of justice favor transfer.

### 1. Relative Levels of Court Congestion Weigh in Favor of Transfer.

Concerns about court congestion and administrative efficiency favor transfer to the Northern District of Texas. As of September 30, 2011, the median time from filing to trial in civil cases was 28.4 months in the Northern District of Illinois as opposed to 20.2 months in the Northern District of Texas. (U.S. District Court – Judicial Caseload Profiles, attached hereto as Exhibit A); see Mitchell, 2007 WL 2948374, at *4 (Norgle, J.) (transferring a case to Arizona because, among other things, "this case would proceed to trial much faster" if transferred). Likewise, more than 10,000 civil cases are pending in the Northern District of Illinois, more than double the number pending in the Northern District of Texas (4,879). (U.S. District Court – Judicial Caseload Profiles, Ex. A); see Jurincie, 2005 WL 2663508, at *4 (Norgle, J.) (transferring case to Indiana upon showing that Northern District of Indiana had fewer pending cases and concluding that "transferring the case to Indiana would necessarily result in a speedier resolution of the matter"). Furthermore, in the Northern District of Illinois, 12.7% of all civil cases on the docket are more than three years old, whereas in the Northern District of Texas, that figure is only 1.5%. (U.S. District Court – Judicial Caseload Profiles, Ex. A).

Trial would also be faster in Texas because of convenience and proximity. If this case is tried in the Northern District of Illinois, all of the Texas witnesses would need to fly in from out of state, and the evidence and records located at BGC's home office in Dallas, Texas, would have to be transported to Chicago. See Mitchell, 2007 WL 2948374, at *4 (Norgle, J.) (finding that identical concerns about transporting witnesses and documentation from Arizona to Chicago favored transfer). Trial in Dallas would require transporting witnesses and documents across town.

- 13 -

Conversely, the Northern District of Illinois would have "significant difficulty issuing subpoenas to unwilling non-party witnesses" located in Texas. Id. (noting that "'witnesses are subject to the usual 100-mile limitation'" for issuance of subpoenas). Rule 45 also allows service of a subpoena "within the state of the issuing court if" a state statute or rule would allow courts of that state to serve the subpoena there. Fed. R. Civ. P. 45(b)(2)(C). In Texas, both statute and court rules provide that a subpoena may be served within a 150-mile area. See Tex. Civ. Prac. & Rem. Code Ann. § 22.002 ("A witness who is represented to reside 150 miles or less from a county in which a suit is pending . . . may be subpoenaed in the suit."); Tex. R. Civ. P. 176.3 ("A person may not be required by subpoena to appear . . . in a county that is more than 150 miles from where the person resides or is served.").

As noted above, BGC has identified two non-parties with relevant information: Express Employment Professionals and Goodwill Industries of East Texas. Express Employment Professionals is located in Tyler, Texas, and is approximately 102 miles from the courthouse in Dallas; Goodwill Industries of East Texas has its head office in Tyler as well, and is approximately 97 miles from the courthouse. See http://maps.google.com (last visited March 15, 2012). Both are within the 150 mile area allowed by Texas law and, therefore, Rule 45. Transfer would thus provide the court with a basis for subpoena power that would include both of the relevant non-parties, significantly easing the burdens of compelling evidence and testimony at trial.

### 2. Familiarity with Local Law is Neutral.

As discussed above, because this case concerns the application of federal law, this factor is neutral.

- 14 -

### 3. Local Interests Favor Resolving this Dispute in Texas.

The relative local interests of each forum in adjudicating the controversy favor transfer. This case involves a named Plaintiff allegedly injured in Texas by a Texas company. Resolution of this case turns on the testimony of witnesses living in Texas, and the Texas company's operating procedures, documents, and files. See Mitchell, 2007 WL 2948374, at *4 (Norgle, J.) (granting transfer to Arizona and finding that "[Corporate Defendant] is an Arizona citizen, and has an interest in a court in its own state deciding liability and damages"). As such, this factor weighs in favor of granting defendant's motion to transfer.

### **CONCLUSION**

Both the convenience of parties and witnesses as well as the interests of justice favor transfer to the Northern District of Texas. Accordingly, the Court should grant BGC's motion and transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted this 16th day of March, 2012.

/s/ *Nabil G. Foster*

Nabil G. Foster (Atty. No. 6273877)
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois 60601-1081
(312) 704-3000
(312) 704-3001 (facsimile)
nfoster@hinshawlaw.com

Cindy D. Hanson
KILPATRICK TOWNSEND &
STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 541-3240

*COUNSEL FOR DEFENDANT BGC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16th, 2012, I electronically filed the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record:

>   Keith J. Keogh
>   Craig M. Shapiro
>   Timothy J. Sostrin
>   KEOGH LAW, LTD.
>   101 N. Wacker Drive, Suite 605
>   Chicago, IL 60606

>   /s/ *Nabil G. Foster*

>   Nabil G. Foster (Atty. No. 6273877)
>   HINSHAW & CULBERTSON LLP
>   222 N. LaSalle Street, Suite 300
>   Chicago, Illinois 60601-1081
>   (312) 704-3000
>   (312) 704-3001 (facsimile)
>   nfoster@hinshawlaw.com

>   Cindy D. Hanson
>   KILPATRICK TOWNSEND & STOCKTON LLP
>   1100 Peachtree Street, Suite 2800
>   Atlanta, Georgia 30309
>   (404) 815-6500
>   (404) 541-3240