**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES WILLIAMS, on behalf of himself and all others similarly situated,<br>　　　　Plaintiff,<br><br>　　v.<br><br>E-BACKGROUNDCHECKS.COM, INC. d/b/a BACKGROUNDCHECKS.COM<br>　　　　Defendant. | Case No.: 12-cv-00190 |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)**

BGC's motion to transfer this case to the Northern District of Texas stems from this case's straightforward, uncontroverted facts. Specifically, this case involves a Defendant (incorporated and headquartered in Texas) that followed (in Texas) policies and procedures (developed in Texas) to prepare an employment background check for a non-party, Express Employment Professionals (located in Texas), that in turn provided the background check to an employer, Goodwill Industries of East Texas (located in Texas), which made the decision (in Texas) not to hire an Illinois Plaintiff, who was applying for a job (in Texas). Besides Plaintiff, there is neither party nor non-party witnesses in Illinois who have information relevant to this putative nationwide class action.

Plaintiff cannot refute that the foregoing points weigh strongly in favor of transfer.[1] Instead, Plaintiff's Response Brief relies on misdirection, and dwells on a handful of non-parties

---

[1] Plaintiff understatedly concedes that "some events may have occurred in Texas," and then incorrectly states that "many of the relevant events took place in Illinois" such as "all of Mr. Williams's actions, as well as the inaccurate information in his report." (Pl's Br. at 6 n.3). That statement is incorrect. The relevant events took place *entirely* in Texas, as described above.

located in states other than Illinois and Texas whose relevance Plaintiff cannot articulate. In any event, the location of those non-parties does not speak to whether Illinois or Texas is the better forum for this case. BGC's Opening Brief details that the witnesses, documents, events, and pertinent non-parties (*e.g.*, the prospective employer) in this case are concentrated in Texas.

By contrast, Plaintiff cannot identify a single relevant witness in Illinois. Apart from Plaintiff himself (who was applying for a job in Texas), the only Illinois witness Plaintiff suggests may exist is a corporate representative of non-party TransUnion. (Pl's Br. at 7). Plaintiff's suggestion is meaningless because TransUnion contributes nothing to this case. This civil action arises out of a criminal background report, not a credit report. (*See* Compl. ¶¶ 11-19; Foster Email, Ex. 2 to Pl's Br.). As BGC's President made unmistakably clear in his deposition, BGC only works with TransUnion in connection with ***credit reporting***, and does not do anything with TransUnion in connection with ***criminal reporting***. (Kessler Dep., Ex. 1 to Pl's Br., at 126:3-14).

In short, Plaintiff has failed to show that Illinois has any connection to this dispute other than the fact that he still lives there because he did not get the job he applied for in Texas. *Tong v. Direct Trading Corp.*, No. 02 C 8331, 2003 WL 22282466, at *5 (N.D. Ill. Oct. 1, 2003) (Norgle, J.) ("[T]his Court's relationship to [Defendant's] claims arise ***only because she resides here***. The vast majority of conduct giving rise to [Defendant's] claims, as well as the witnesses and sources of proof and other evidence, bear relationship to the Northern District of Texas.") (emphasis added).[2]

---

[2] Courts have consistently recognized that it is appropriate to transfer FCRA cases, including class actions, to the defendant's home district. *See, e.g., Barela v. Experian Info. Solutions, Inc.*, No. 04-5144, 2005 WL 770629, at *4 (N.D. Ill. Apr. 4, 2005) (noting that the nature of an FCRA case points to the defendant's place of business as the appropriate venue); *Smith v. HireRight Solutions, Inc.*, No. 09-6007, 2010 WL 2270541, at *9 (E.D. Pa. June 7, 2010) ("Multiple courts

## ARGUMENT AND CITATION TO AUTHORITY

**I.   The Motion to Transfer is Ripe.**

Plaintiff suggests that although the parties have been engaged in discovery related to the motion to transfer for almost six months, the Court should now start the process anew with unspecified discovery[3] and briefing on BGC's pending motion to dismiss and motion to strike. The Court should reject Plaintiff's attempt to further delay adjudicating the now fully-briefed motion to transfer on which Plaintiff has already been afforded discovery.[4]  Indeed, courts in this Circuit have rejected the path Plaintiff now urges. *See, e.g., D & G, Inc. v. Supervalu, Inc.*, No. 08-cv-761-slc, 2009 WL 1110412, at *7 (W.D. Wis. Apr. 24, 2009) (rejecting Plaintiff's attempts to open discovery and consider a motion to dismiss instead of a motion to transfer and stating that "[b]ecause I have decided that the case should be transferred pursuant to 28 U.S.C. §

---

considering § 1404 transfer motions in FCRA cases have noted that the situs of the material events, and thus the appropriate venue, is generally the place where the defendant credit reporting agency conducted its business."); *Roe v. Intellicorp Records, Inc.*, No. 12-CV-02567, 2012 WL 3727323 (C.D. Cal. Aug. 27, 2012) ("[A]ll employees who could testify regarding [defendant]'s practices and procedures work and reside in [Ohio]. On the other hand, Plaintiff . . . would be more inconvenienced by a transfer to Ohio . . . . However, as noted above, Plaintiff filed this lawsuit as a nationwide class action . . . ."); *Bogollagama v. Equifax Info. Servs.*, No. 09-1201, 2009 WL 4257910, at *3 (finding that operative facts in an FCRA case arose in the forum where credit reports were compiled and issued); *Klingensmith v. Paradise Shops, Inc.*, No. 07-322, 2007 WL 2071677, at *2-3 (W.D. Pa. July 17, 2007) (noting that an FCRA class action focuses on the defendant's conduct); *Ayling v. Travelers Prop. Cas. Corp.*, No. 99-3243, 1999 WL 994403, at *5 (E.D. Pa. Oct. 28, 1999) ("Where plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events giving rise to the claim occurred."); *Murphy v. Trans Union, LLC*, No. 12-499, 2012 WL 3536322 (E.D. Pa. Aug. 15, 2012) (transferring to the defendant CRA's home district because relevant employees lived and worked in that district).

[3] Importantly, such discovery would take place almost entirely in Texas.

[4] Judge Nolan recognized that the motion to transfer is ripe when she terminated her referral, stating: "Limited discovery on the motion to transfer issue is now complete. The motion to transfer, which is a dispositive motion, is now ready for the District Court to set briefing." (Dkt. No. 49).

3

1404(a), it would not be proper to consider the merits of the motion to dismiss or make decisions about the scope of allowable discovery . . . .").

The Northern District of Texas is well-positioned to decide the pending dispositive motions. Courts across the country have recognized that dispositive motions should be handled by the transferee court. *See, e.g.*, *Howard v. Viking Ranches, Inc.*, No. 86 C 9830, 1987 WL 16896, at *1 (N.D. Ill. Sep. 9, 1987) ("This Court declines, therefore, to rule on any of defendants' pending motions to dismiss and reserves those rulings for the transferee court."); *Daniell v. Mohsin*, No. 2:07-CV-438, 2009 WL 674358, at *1 (E.D. Tex. Mar. 9, 2009) ("In light of the transfer of venue . . . all pending motions are deferred to the transferee court."); *Moore v. McKibbon Bros., Inc.*, 41 F. Supp. 2d 1350, 1357-58 (N.D. Ga. 1998) (transferring a case and "declin[ing] to rule on other pending motions, . . . finding that it is more appropriate for the trial judge in the transferee district to do so"); *Tillotson v. City of El Paso*, No. CIV 09-0963 JB/CG, 2010 WL 597993, at *5 (D.N.M. Jan. 29, 2010) (collecting cases).

Further, Plaintiff's arguments in favor of delaying the motion to transfer mistakenly assume that if this Court were to first consider the motion to eliminate class claims and granted that motion, he would succeed in opposing transfer. Plaintiff's argument ignores that his choice is not dispositive but is instead just one of the nine factors in the overall analysis. *See Mitchell v. First N. Credit Union*, No. 07 C 1891, 2007 WL 2948374, at *3 (N.D. Ill. Oct. 3, 2007) (Norgle, J.) ("A plaintiff's choice of forum is usually not the determinative factor."). The Court should reject Plaintiff's attempts to further delay resolution of this case through costly and needless discovery occasioned by his decision to bring a nationwide class action in a forum with no connection to his dispute. Briefing on the motion to transfer is now complete and it is ripe for adjudication.

II.     The Private Factors Favor the Northern District of Texas

    A.     The Convenience of the Parties and Witnesses Favors Texas.

BGC's Brief explains in detail why Plaintiff's putative nationwide class action is better addressed in Northern District of Texas, where witnesses and information relevant to Plaintiff's claims are concentrated. (*See* BGC's Br. at 5-11). Conversely, Plaintiff offers nothing to show that Illinois is a *better* forum than Texas, arguing instead that Texas is supposedly not *as good* as BGC states. Plaintiff's misplaced argument stems from Plaintiff's repeated assertion of an unremarkable point: namely, that some tangential non-party discovery in this case may take place outside Texas. That is true of many, if not most, cases. But Plaintiff's emphasis on non-parties of minor importance misses the central point of this transfer motion, which is to weigh the efficiencies of proceeding in Texas versus Illinois. Plaintiff's argument is also factually incorrect because the bulk of both party and key non-party witnesses in this case are located in Texas and Plaintiff's proposed sources elsewhere are largely irrelevant.

In this regard, although Plaintiff extensively quotes from *Landis v. Warner Chilcott (US), LLC*, No. 10-cv-5283, 2010 WL 5373664 (N.D. Ill. Dec. 15, 2010), to argue that BGC has not met its burden of providing specific examples of information and witnesses in Texas, the *Landis* case actually supports BGC. Plaintiff elected not to quote *Landis's* critical point, replacing it instead with asterisks. (*See* Pl's Br. at 5). Specifically, the *Landis* court observed that "***Plaintiff on the other hand, identifies nine Illinois residents by name and identifies generally the substance of their expected testimony.***" *Id.* at *4 (emphasis added). By comparison, Plaintiff here cannot identify a *single* relevant witness in Illinois.[5] BGC, on the other hand, has identified

---

[5] As explained herein, although Plaintiff identifies Trans Union as a potential witness, Trans Union has nothing relevant to contribute regarding the claims that Plaintiff brings in this case.

the categories of persons and documents in Texas necessary to address Plaintiff's allegations in the Complaint based on its preliminary and ongoing investigation of this matter.[6]

### 1. Relevant Evidence is Concentrated in Texas.

As Plaintiff himself recognizes, this is a case about BGC's *policies and procedures* in complying with the Fair Credit Reporting Act ("FCRA"). (Pl's Br. at 11) ("Indeed, this case turns on the legal question of whether Defendant has complied with the FCRA . . . ."). As such, the relevant information is concentrated in Texas.

Plaintiff was given the opportunity to engage in discovery related to the motion to transfer, and to that end conducted a searching deposition of BGC's President, Craig Kessler. After discovery, the key facts pertinent to this motion remain uncontroverted:

- BGC is a Texas company with a single office in Dallas, Texas. (Kessler Decl. ¶ 4, Kessler Dep. at 19:14-20).

- Plaintiff's two claims directly implicate how BGC handles background reports, which it does from Dallas. (Kessler Decl. ¶¶ 7, 9-11). All of BGC's employees responsible for responding to and fulfilling requests for consumer background reports are located in Dallas. (Kessler Dep. 19:10-20).

- BGC's written policies regarding the production of consumer background reports are located in Dallas. (Kessler Dep. 25:20-25).

- All data acquisition for instant searches is handled through Genuine Data Services ("GDS"), a BGC subsidiary in Texas. (Kessler Dep. 75:18-22 – 76:2-9; 118:1).

---

[6] Defendant's reliance on *Clear Channel Outdoor, Inc. v. Rubloff Oakridge Algonquin, L.L.C.*, No. 03 C 3063, 2003 WL 22382999 (N.D. Ill. Oct. 16, 2003) is similarly misplaced. *Clear Channel* involved a single plaintiff and a single defendant trying to transfer between divisions in the same district where the Plaintiff had sued in the division where all of its relevant evidence was located. None of those factors exists here.

- BGC's internal data acquisition team, which processes data to ensure FCRA compliance, is located in Dallas. (Kessler Dep. 29:19 – 30:5; 93:10-14).

- The majority of BGC's key management personnel related to Plaintiff's claims are located in Texas. (Kessler Dep. 37-38).

- BGC maintains its database in Dallas, with a redundant center in South Carolina. (Kessler Decl. ¶¶ 18-19).

- Plaintiff's own claims relate exclusively to Texas: his claims concern a job application with Goodwill Industries of East Texas. (Compl. ¶ 11).

### 2. The "Sources Throughout the Country" Plaintiff Points to are Irrelevant to this Lawsuit.

Plaintiff argues that BGC "uses sources that are located throughout the country," as a reason why the Court should deny BGC's motion. (Pl's Br. at 6). Many of Plaintiff's proposed avenues for discovery, however, are based on Plaintiff's misunderstanding about how BGC performs background screening, despite the fact that BGC has explained its process to Plaintiff and his counsel in the Kessler deposition. (Kessler Dep. 69:1-14; 76:4-20; 105:21 – 106:5; 117:5-6). BGC also explained the process in detail in the email to Plaintiff's counsel that is annexed to Plaintiff's opposition as Exhibit 2. (Foster Email at 1). BGC performs consumer background checks in two distinct ways: (1) using an instant database search, or (2) using "traditional search," in which BGC sends individuals to a courthouse to research information.

Plaintiff's report was produced from the former method – an instant search of the BGC database. BGC did not perform a "traditional search" about Plaintiff. (Kessler Dep. 127:1-6) ("Q: To obtain the information [in Plaintiff's report] would someone have to physically go to a courthouse? . . . A: No."). This is an important distinction in considering potential relevant third party witnesses. For example, Plaintiff has no basis to claim that he will need to depose the

7

individual researchers "spread out around the country" who perform traditional manual searches, (Pl's Br. at 8), because Plaintiff's background report did not involve a traditional search (and, by corollary, neither did the reports of class members).

Plaintiff is therefore mistaken in asserting that there is relevant information in the following locations:

- **Illinois:** Plaintiff identifies only *a single purported non-party witness in Illinois*: a designated corporate representative of TransUnion. (Pl's Br. at 7).[7] TransUnion, however, is not relevant to this case because TransUnion does credit reporting and ***this case is about criminal background reporting, not credit reporting:***

    | | |
    |---|---|
    | Q | What sort of background check is run – is this – does this [Plaintiff's background report] reflect? |
    | A | It reflects a criminal background screen. |
    | Q | Which type of BGC's searches does it reflect? |
    | A | The US OneSEARCH. |
    | Q | Is there any credit information in the US OneSEARCH? |
    | A | There is no credit information in the US OneSEARCH. |
    | Q | ***So for this sort of search, you would not have gotten information from TransUnion?*** |
    | A | ***That is correct.*** |

    (Kessler Dep. 126:3-14) (emphasis added). A review of Plaintiff's Complaint reveals no allegations related to any credit information provided by BGC. Counsel for BGC clarified this same point in a follow up e-mail to Plaintiff's counsel:

    > Some clients order more extensive reports on their job applicants. These reports *are not like the one provided on Mr. Williams*. Although this information is *irrelevant to the report provided on*

---

[7] Even if TransUnion were relevant, its witness would be located in California. (*See* Foster Email at 1) (explaining that BGC deals with TransUnion in California); (Pl's Br. at 7) ("[T]hat person would likely be located in Chicago ***or Orange County, California***.") (emphasis added).

8

> *Mr. Williams*, BGC will explain these searches for clarity's sake. . . . A few BGC clients ask for *credit information* on their job applicants. BGC fulfills these requests by getting information from TransUnion.

(Foster Email at 1) (emphasis added). As such, TransUnion is not a relevant source of information for Plaintiff's claims.

- **Florida:** Plaintiff identifies two potential sources of information in Florida.

    o **Ray Conrad:** Mr. Conrad is the owner of BGC. However, as explained at length in Mr. Kessler's deposition, Mr. Conrad is not involved in BGC's day-to-day operations. (Kessler Dep. 40:10-15). Instead, he receives periodic telephone updates on the business generally, in his capacity as an owner. (*Id.* at 42:13-15). Mr. Conrad does not have information about the details of BGC's FCRA compliance, and Plaintiff does not explain Mr. Conrad's relevance to this lawsuit beyond the proposition that he exists and lives in Florida. (Pl's Br. at 9).

    o **The Last Option:** BGC uses a company called The Last Option ("TLO") occasionally to provide basic name and address histories for consumers. (Kessler Dep. 102:1 – 103:22). There is no suggestion that BGC used TLO data in preparing Plaintiff's report. The mere fact that BGC does occasional business with TLO unrelated to the underlying facts of this lawsuit is not sufficient to warrant discovery from TLO.

- **California:** Plaintiff identifies Court Ventures, a non-party California company from which BGC indirectly acquires information that ultimately becomes part of BGC's database. Court Ventures is substantially removed from this dispute and it is unlikely that it has witnesses with relevant information. Instead, BGC's own

9

witnesses, and employees of GDS (a Texas company that coordinates with Court Ventures in supplying information to BGC), are more likely to have relevant information about how data acquired from Court Ventures is integrated into BGC's database in compliance with the FCRA because all of BGC's instant database data is processed through GDS in Texas. (Kessler Dep. 76:2-9).

- **India:** Plaintiff identifies Bright Corner as a potential source of information in India. Bright Corner, like Court Ventures, is a remote third party that provides data that ultimately becomes part of BGC's database through processing by GDS and BGC's own employees. Representatives of BGC and GDS are thus the relevant witnesses.

- **Virginia:** Plaintiff identifies NAPBS, a trade group of background reporting companies, as a potential relevant source of information in Virginia simply because Mr. Kessler testified that BGC sometimes uses NAPBS "as a resource." (Kessler Dep. 112:22). Again, NAPBS is irrelevant because this case turns on whether *BGC's internal policies and actions* are FCRA compliant.

- **South Carolina:** Plaintiff also dwells on the fact that BGC has some staff and redundancy in South Carolina. Plaintiff's focus on South Carolina is only further proof that Illinois is disconnected from this dispute. Regardless, BGC's presence in South Carolina is comparatively far less than BGC's presence in Texas. Plaintiff's unremarkable point that BGC has some presence in South Carolina does not diminish BGC's central point that the persons and information most relevant to *this case's* underlying facts are concentrated in Texas.

130434407v1 0932177

Put simply, the convenience of witnesses favors Texas. The possibility of some witnesses outside of Texas is the same whether this case stays in Illinois or moves to Texas. As such, transfer to the Northern District of Texas will reduce inconvenience and expense and foster efficiency. *See Mitchell*, 2007 WL 2948374, at *3 (Norgle, J.) (observing that transfer will necessarily inconvenience one party but is appropriate where it results in less overall inconvenience).

### B. Access to Sources of Proof is Easier in the Northern District of Texas.

Plaintiff argues that access to sources of proof does not favor transfer because technological innovations have minimized many concerns about transporting documents. (Pl's Br. at 11-12). BGC does not contest that technology has decreased the importance of this factor. It is, however, incontrovertible that the relevant documents are concentrated at BGC's headquarters in Dallas. (Kessler Decl. ¶¶ 15-16, 18-20). As this Court has recognized, the concentration of relevant documents in a single location counsels in favor of transfer, even if that factor is not paramount in light of technology. *See Rudd v. Lux Prods. Corp. Emerson Climate Techs. Braeburn Sys., LLC*, No. 09-cv-6957, 2011 WL 148052, at *6 (N.D. Ill. Jan. 12, 2011) (Norgle, J.) (transferring a case to the defendant-corporation's headquarters because "the place where the defendant's documents are kept weighs in favor of transfer to that location") (quotation marks omitted). Further, the nature of the information in this case – sensitive private consumer information about individuals who may be unaware that they are part of a proposed class – warrants minimizing any risk of data exposure by, for example, doing in-person delivery of physical documents at their source, which is Texas. Thus, while this factor may not be of substantial importance in modern analysis, it weighs in favor of transfer.

130434407v1 0932177

### C. Costs of Obtaining Attendance of Witnesses are Lower in the Northern District of Texas.

Plaintiff effectively concedes that the costs of obtaining the attendance of witnesses are lower in the Northern District of Texas. Plaintiff's only rejoinder is that BGC's employees are presumed to attend because they are under the control of BGC, and that the Court should instead focus on non-party witnesses with little or no relevance to the claims in this case.

Plaintiff ignores, however, that this factor considers the *costs* of such attendance. Plaintiff's position would require numerous BGC employees to travel from Texas to Illinois, a consideration that this Court has found instructive on numerous occasions. *See, e.g.*, *Marvel Group, Inc. v. Modular Interiors*, No. 01 C 6577, 2002 WL 1052043, at *2 (N.D. Ill. May 24, 2002) (Norgle, J.) (transferring a case from Chicago to Texas and noting that requiring witnesses to travel from Texas to Illinois for trial would "impose [an] undue hardship"); BGC's Br. at 8-9.

Further, BGC has already identified the two most relevant non-party witnesses: Goodwill Industries of East Texas and Express Employment Professionals, both of which dealt with Plaintiff's job application and both of which are Texas companies within the subpoena power of the Northern District of Texas. (*See* BGC's Br. at 14) (discussing the limits of a court's subpoena power). The costs and difficulty of securing the attendance of witnesses for proceedings in Illinois weighs in favor of transfer.

### D. Plaintiff's Choice of Venue is Entitled to Minimal Deference

Plaintiff does not address any of the cases that BGC cited in its Brief in which courts – including this Court on repeated occasions – have recognized that the traditional deference afforded to a plaintiff's choice of venue is substantially weakened in nationwide class actions. (BGC's Br. at 10-11) (collecting cases).

Instead of distinguishing BGC's authority, Plaintiff cites a single case for the proposition that this Court has denied a motion to transfer where the plaintiff alleged a nationwide class action. (*See* Pl's Br. at 3) (citing *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853 (N.D. Ill. 2007)). Plaintiff's reliance on *Gueorguiev* is misplaced. *Guergouiev* was not a *nationwide* class action, but instead a class of persons affected *in Illinois*. *Id.* at 857-58 ("The receipts at issue in this case were distributed in defendant's Illinois stores and this district has a relationship to the dispute."). Furthermore, unlike BGC in this case, the defendant in *Guergouiev* had stores and operations in Illinois. *Id.*; *cf.* (Kessler Dep. 86:8-9) ("[I]t wouldn't be an employee of BGC because we have none in Illinois."). Finally, Judge Bucklo found it important that the defendant in *Guergouiev* was not trying to transfer to the district of its headquarters, but to a district where a similar case was pending. *Guergouiev*, 526 F. Supp. 2d at 858.

As the cases cited throughout BGC's Brief and Plaintiff's own opposition brief all acknowledge, a nationwide class action is not afforded the same deference that Plaintiff now seeks. (*See* BGC's Br. at 10-11). Plaintiff's failure to address those authorities is telling and reveals that the well-established case law in this District weighs in favor of transfer.

**III.    The Interests of Justice Favor Transfer**

Plaintiff fully concedes that local interests favor resolving this dispute in Texas because of its connection to the facts and to BGC. (*See* BGC's Br. at 15). Plaintiff's only challenge to the interests of justice is to dispute the administrative efficiency of resolving this dispute in the Northern District of Texas. BGC does not disagree that the Northern District of Illinois is an efficient district capable of resolving this matter, but the statistics discussed at length BGC' Brief illustrate that the Northern District of Texas has a lighter caseload, shorter median time to trial,

13

and smaller number of cases pending more than three years, which are relevant considerations in deciding which venue is most efficient. (*See* BGC's Br. at 13-14).

Plaintiff cites *Rana v. College Admissions Assistance, LLC*, No. 11 C 4280, 2012 WL 1245674 (N.D. Ill. Apr. 13, 2012), as support for the notion that the Court ought not find these statistics persuasive. Although the *Rana*[8] court concluded that relative caseloads of this District and the Northern District of Texas did not "strongly favor" transfer, this Court has recognized that statistics – such as time to trial – play an important role in considering the interests of justice. *See Mitchell*, 2007 WL 2948374, at *4 (Norgle, J.); *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 737 (N.D. Ill. 2007) (considering case management statistics in deciding to transfer). Sister courts outside this District have similarly found such statistics helpful in determining whether to transfer FCRA class actions. *See, e.g.*, *Smith*, 2010 WL 2270541, at *9 (transferring a nationwide FCRA class action to the defendant CRA's home state and considering, among other things, administrative court statistics).

In sum, Plaintiff has not advanced a reason why the interests of justice favor denying BGC's motion. Texas has a local interest in overseeing cases against its corporate citizens. And, although both districts are capable of efficiently handling this dispute, the statistics explained in BGC's Brief illustrate why the Northern District of Texas is well positioned to adjudicate this dispute quickly and effectively.

## **CONCLUSION**

The facts underlying this case occurred in Texas, and consequently the convenience of parties and witnesses as well as the interests of justice favor transfer to the Northern District of

---

[8] Plaintiff's repeat citations to *Rana* are unavailing. *Rana*, like the other cases cited by Plaintiff, did not involve a nationwide class action and, indeed, the *Rana* court recognized that Plaintiff's choice of forum was entitled to deference *only* because he was bringing a state resident class action rather than a nationwide class action. 2012 WL 1245674, at *5.

14

Texas. Plaintiff has failed to show why this case ought to proceed in Illinois, and instead muddies the waters by pointing to irrelevant non-party witnesses found in neither Illinois nor Texas. Put differently, Plaintiff has failed to adduce any evidence that Illinois is a more convenient forum than Texas, which is the undisputed location of the underlying events as well as numerous party and non-party witnesses. Accordingly, the Court should grant BGC's motion and transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted this 21st day of September, 2012.

            s/ Nabil G. Foster
          Nabil G. Foster (Atty. No. 6273877)
          HINSHAW & CULBERTSON LLP
          222 N. LaSalle Street, Suite 300
          Chicago, Illinois 60601-1081
          (312) 704-3000
          (312) 704-3001 (facsimile)
          nfoster@hinshawlaw.com

          Cindy D. Hanson
          KILPATRICK TOWNSEND &
           STOCKTON LLP
          1100 Peachtree Street, Suite 2800
          Atlanta, Georgia 30309
          Telephone: (404) 815-6500
          Facsimile: (404) 541-3240

*COUNSEL FOR DEFENDANT BGC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2012, I electronically filed the foregoing **DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record:

> Keith J. Keogh
> Craig M. Shapiro
> Timothy J. Sostrin
> KEOGH LAW, LTD.
> 101 N. Wacker Drive, Suite 605
> Chicago, IL 60606

                                                   s/ Nabil G. Foster
                                          Nabil G. Foster (Atty. No. 6273877)
                                          HINSHAW & CULBERTSON LLP
                                          222 N. LaSalle Street, Suite 300
                                          Chicago, Illinois 60601-1081
                                          (312) 704-3000
                                          (312) 704-3001 (facsimile)
                                          nfoster@hinshawlaw.com

                                          Cindy D. Hanson
                                          KILPATRICK TOWNSEND &
                                             STOCKTON LLP
                                          1100 Peachtree Street, Suite 2800
                                          Atlanta, Georgia 30309
                                          (404) 815-6500
                                          (404) 541-3240

130434407v1 0932177